**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Traveon Parham | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 20 C 50087 |
| v. | ) | |
| | ) | Hon. Philip G. Reinhard |
| Dr. Deanna Brockhart, Warden | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Petitioner's § 2254 petition [1] is denied. The court declines to issue a certificate of appealability. This matter is terminated.

## STATEMENT-OPINION

Petitioner Traveon Parham, proceeding pro se, has filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions from the Circuit Court of Winnebago County. The state has filed an answer arguing that the petition should be denied, and petitioner has filed a reply.

## FACTS

The following summary is taken from the state's answer [27] with only minor editorial changes being made. This summary, in turn, relies on the factual findings set forth in the Illinois appellate court's decision affirming, in part, petitioner's convictions. *See People v. Parham*, 2018 IL App (2d) 160266-U (Sept. 27, 2018) (Ex. F to the state's answer). Under 28 U.S.C. § 2254(e)(1), the facts underlying petitioner's convictions as determined by the state court are presumed correct absent clear and convincing evidence. Petitioner has not challenged the accuracy of these underlying facts, either as set forth in the appellate court's decision or in the state's answer. [1, 36.] Although the issue in this case focuses mostly on the events (or more specifically, the alleged conspiracies) taking place on February 24, 2013, this summary includes related evidence going back to March 2012.

In February 2013, petitioner fled from police in a stolen car and crashed it into another vehicle, killing the driver. He was charged in the Circuit Court of Winnebago County with several offenses, including first degree murder, aggravated driving under the influence (DUI), reckless homicide, and several counts of conspiracy to commit unlawful possession of a stolen vehicle.

1

At petitioner's bench trial, evidence established that petitioner, Corey Butler, Latrell Hightower, and Tyler Mannery were friends who lived in the same neighborhood in Rockford. In March 2012, petitioner was in South Beloit, Illinois, driving a stolen Mercury Grand Marquis with Butler and three female passengers. When police attempted to pull them over, they fled, and petitioner and Butler were arrested after a high-speed chase.

In January 2013, Butler, along with petitioner and Hightower, stole a blue Hyundai from the parking lot of a Chinese restaurant in Rockford.

On February 6, 2013, Hightower, with Butler and petitioner, stole a black Jeep Liberty parked in the owner's driveway with the keys inside.

On February 17, 2013, petitioner and Butler burglarized several vehicles in a church parking lot.

On February 23, 2013, a red Pontiac Grand Am was stolen from a Rockford University Parking lot. Hightower testified that he and petitioner found it with the keys inside, stole it, and left it with Mannery who claimed that he stole it from the college himself.

Hightower testified that on Sunday, February 24, 2013, he picked up petitioner in the blue Hyundai between 8:00 and 9:00 am. The two went to a McDonalds, and then picked up Butler. The three men then drove to the parking lot of a church, where they looked for unlocked vehicles to burglarize. They found a tan Chevrolet Suburban with the keys inside and stole it.

The three then drove to Mannery's girlfriend's house and parked the Suburban down the street around the corner from petitioner's house. They then took the red Grand Am from Mannery, with petitioner driving. They stopped in a second parking lot, where petitioner and Hightower got out and looked for cars to burglarize. A witness called 9-1-1.

Winnebago County Sheriff's Deputy Angie Tetzlaff went to the parking lot to follow up on the call. When she arrived, she saw a man looking in a vehicle. As Tetzlaff approached, the man ran and got into the driver's seat of a red Grand Am. Tetzlaff turned on her lights and siren, but petitioner did not stop, and she chased the Grand Am out of the parking lot. Petitioner ran a stop sign, drove between 65 and 70 miles per hour in a 35 mile-per-hour zone, and crossed into an opposing lane of traffic. Tetzlaff shut off her lights and siren and stopped the chase because it was becoming dangerous. Tetzlaff then saw the Grand Am travel through a red light and crash into a vehicle in the intersection.

At the crash scene, petitioner ran from the Grand Am, but three citizens chased him, cornering him in a nearby parking lot. Just before petitioner's arrest, witnesses saw him throw keys away, which police later determined were the keys to the stolen Suburban that police found parked two blocks from petitioner's house. Police also recovered the stolen Jeep, also parked near petitioner's house, which had various stolen items in it. In the trunk of the crashed Grand Am, police found a laptop, wallet, and phone that had been stolen from parked vehicles. Petitioner,

Butler, and Hightower were arrested and taken to a hospital to be treated for injuries sustained in the crash, where testing showed that petitioner had THC in his system. Karen Shafer, the driver of the vehicle petitioner crashed into, died from her injuries.

Petitioner was charged with 29 counts. Counts 6 and 7 alleged that petitioner agreed with Butler and Hightower to commit aggravated unlawful possession of the stolen Grand Am. The counts alleged different aggravating elements based on driving more than 21 miles per hour over the speed limit (count 6) and disobeying traffic control devices (count 7). Count 12 alleged that petitioner agreed with Butler and Hightower to commit unlawful possession of the stolen Suburban on the same day.

The trial court convicted petitioner of aggravated DUI causing death and reckless homicide, but acquitted him of first degree murder. The court also convicted petitioner of the three vehicle theft conspiracy charges. The trial court sentenced petitioner to an aggregate term of 24 years in prison. On direct appeal, petitioner argued, in relevant part, that counts 6 and 7 (conspiracy to commit the aggravated unlawful possession of the Grand Am), and count 12 (conspiracy to unlawfully possess the Suburban) should be reduced to a single conviction for vehicle theft conspiracy because the State proved the existence of only one, continuing agreement between petitioner and his coconspirators to steal vehicles and other property.

The Illinois appellate court affirmed count 12 (involving the Suburban), holding that, viewed in a light most favorable to the state, the trial court could have reasonably found that it was based on a separate conspiracy than the counts involving the Grand Am. *See People v. Parham*, 2018 IL App (2d) 160266-U (Sept. 27, 2018). The state conceded that counts 6 and 7 were based on the same conspiratorial agreement and that one of them must be set aside, so the appellate court remanded with instructions to vacate either count 6 or 7. The Illinois Supreme Court denied petitioner's petition for leave to appeal in March 2019. On remand, the trial court vacated count 6, resulting in an aggregate prison sentence of 19 years.

## ANALYSIS

Under 28 U.S.C. § 2254, a federal district court has limited power to grant habeas relief to state prisoners. Relief will not be granted unless the court determines that a state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(1)-(2). "A state-court decision is 'contrary to' clearly established federal law if the state court 'applie[d] a rule different from the governing law set forth' in Supreme Court decisions or decided a case differently than the Supreme Court has 'on a set of materially indistinguishable facts.'" *Corral v. Foster*, --- F.4th ---, 2021 WL 3012295, *3 (7th Cir. July 16, 2021) (quoting Supreme Court case). As both the Supreme Court and the Seventh Circuit have noted, this standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (quoting Supreme Court case).

Petitioner raises a single claim here. He argues that count 12, involving the Suburban, must be vacated because the evidence was insufficient to find the existence of a separate conspiracy as set forth in Count 7, involving the Grand Am. [1 at pp. 8-11.] He relies on a single Supreme Court case—*United States v. Kissel*, 218 U.S. 601 (1910)—and argues that no rational factfinder could have found that there were two separate conspiracies on February 24th. Petitioner relies heavily on the following quotation from *Kissel*, an opinion authored by Oliver Wendell Holmes:

> [W]hen the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one.

*Id.* at 607. In its answer, the state construes the petition as raising a sufficiency of the evidence challenge under *Jackson v. Virginia*, 443 U.S. 307 (1979) and then argues this claim fails for several reasons. This court agrees with these arguments.

First, the state asserts that *Kissel* is not on point. It states that *Kissel* did not address the precise issue here—what evidence is necessary to prove multiple conspiracies versus a single overarching conspiracy—but instead considered the situation where the analysis began by assuming that the conspiracy contemplated bringing about a long-term result. *See* 218 U.S. at 607 ("*when* the plot contemplates bringing to pass a continuous result") (emphasis added). The court agrees that *Kissel*, decided in 1910, is not on point. Among other things, it involved a much different factual pattern. The defendants were accused of trying to eliminate competitors in the refined sugar market, and the court noted that the parties contemplated that the conspiracy would continue until they succeeded in driving the competitors out of the market. *Id.* at 608. Second and more substantively, the state argues that, even if *Kissel* were somehow on point factually, it would not matter because, in a sufficiency challenge, state law defines the elements of the crime and because *Kissel* was federal criminal case not addressing Illinois law. [27 at p. 8 (citing to *Bates v. McCaughtry*, 934 F.2d 99, 102-03 (7th Cir. 1991) ("State law means what state courts say it means.").] This court agrees with this argument. *See also Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court cannot "second-guess state courts in interpreting state law").

Finally, the court notes that petitioner argues generally that he and the co-participants allegedly entered into a broader conspiracy to "steal motor vehicles on multiple occasions" and claims that this broader conspiracy was designed to go on "until they were caught by the police." [1 at p. 11; *see also* 36 at pp. 2-3.] In short, he asserts that they had some sort of "master plan" for stealing cars. To support this argument, petitioner relies on several statements made by the trial court, during the trial, arguably suggesting there was a broader conspiracy of some sort. However, this argument, as well as the trial court's specific comments, were thoroughly discussed by the Illinois appellate court. Set forth below is the key part of the analysis, which is worth quoting at some length:

> Here, in contrast [to *People v Edwards*], defendant was *charged* with multiple conspiracies, in separate counts. Further, as the State notes, there were no facts to show that defendant, Hightower, and Butler had a master plan involving a particular location or overarching purpose, as was seen in *Edwards.* Rather, as the State observes, the evidence reasonably showed them to be "recidivist criminals who showed a predilection for stealing cars and committing motor vehicle thefts of parked cars." Viewing the evidence in the State's favor, the court could have reasonably found that the evidence showed that the agreements arose almost as impulses, if and when the opportunity presented itself, to possess a stolen car and use it to commit car burglaries.
>
> We disagree with defendant's assertion that the court's comment that the "Pontiac *[sic]* Suburban was but a tool to accomplish their criminal endeavors that were performed on multiple occasions" reflects that there was only one ongoing criminal enterprise. Rather, as noted when it mentioned endeavors that were performed on multiple occasions, the court could have found that there was a pattern of behavior, over time and in different locations *(e.g.,* South Beloit and Rockford), to steal vehicles where the keys were left inside. However, there was no evidence reflecting that, although defendant and the co-conspirators committed these types of crimes on multiple occasions, there existed an overarching purpose to, for example, burglarize churches in a certain area of Rockford. Indeed, the agreements would sometimes involve these three men, but sometimes others, and they did not always commit all of the acts together. As such, the court could have found that, after stealing the Suburban, defendant, Hightower, and Butler terminated that conspiracy when they parked the Suburban and abandoned it. They then regrouped, went to see Mannery, and asked if he would like to join them in committing some burglaries, thus, beginning a new conspiracy by getting into a different stolen car (the Grand Am) and setting off in a new direction. We agree with the State that, viewing the evidence in a light most favorable to it, the court could have reasonably found that defendant and his co-conspirators engaged in similar behavior twice on February 24, 2013, once involving the Grand Am and once involving the Suburban, but that each incident constituted a separate conspiracy.

Ex. F at pp. 16-17 (emphasis in original). Applying the deferential and difficult-to-meet standard of review required here, which includes both the habeas deference and the second lawyer of deference in a sufficiency of evidence challenge, this court cannot find any basis for concluding that the state court's analysis above was contrary to, or an unreasonable application of, *Kissel* or *Jackson* or any other Supreme Court case.[1] *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) (habeas relief is meant only to "guard against extreme malfunctions in the state criminal justice system") (quoting *Jackson v. Virginia*). As the state points out, the evidence was sufficient to allow a rational factfinder to conclude that the crimes here were opportunistic. Petitioner and the others drove around checking doors of parked cars to see if they were locked and the fact that they went

---

[1] The court also cannot find any other basis upon which habeas relief should be granted.

to different locations (restaurant, church, university) "did not show a broader strategy." [27 at p.10.] For all these reasons, the petition is denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings For the United States District Courts, the court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2)). Such a showing requires her to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Arredondo*, 542 F.3d at 1165 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Date: 7/21/2021                                         ENTER:

                                                                         *Philip G. Reinhard*
                                                                       United States District Court Judge

                                                                    Notices mailed by Judicial Staff. (LC)